UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LEMEL DETANIO HANKSTON,

    Petitioner,    2:13-cv-01601-JCM-GWF

vs.

**ORDER**

DWIGHT NEVENS, *et al.*,

    Respondents.

_____/

Introduction

This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by LeMel Detanio Hankston, a Nevada prisoner. Two claims in Hankston's second amended habeas petition remain to be resolved. The court will deny those claims, and deny Hankston's petition. The court will also deny Hankston's motion for reconsideration of the earlier dismissal of certain of his claims on procedural default grounds. The court will grant Hankston a certificate of appealability with regard to one issue.

Background

Hankston was convicted on September 2, 2008, following a jury trial in Nevada's Eighth Judicial District Court, in Clark County, of attempted murder with the use of a deadly weapon and battery with the use of a deadly weapon resulting in substantial bodily harm. *See* Judgment of Conviction, Exhibit 26 (ECF No. 15-26) (The exhibits referred to in this order were filed by

Hankston, and are located in the record at ECF Nos. 15, 16, 17 and 21.).  He was sentenced to two consecutive terms of five to sixteen years in prison for the attempted murder with the use of a deadly weapon, and the battery conviction was dismissed as redundant.  *See id*.

In its order affirming Hankston's judgment of conviction, the Nevada Supreme Court described the background of the case as follows:

> At trial the State adduced evidence that Hankston had a brief confrontation with Kevin W., who was associated with a rival gang.  Hankston followed Kevin and his friend to a local store.  After separately returning from the store, Hankston and Kevin again exchanged words.  Kevin left the area, but returned shortly thereafter with a group of friends and relatives.  Hankston approached Kevin's group, once more exchanged words with Kevin, then said, "I'm going to solve this," reached into his pants, pulled out a gun, and fired four shots in rapid succession at Kevin's group.  One of the bullets hit Kevin's friend Andre in the abdomen, piercing his liver and lung.  Andre was hospitalized for fifteen days, and required two surgeries to repair his injuries.

Order of Affirmance, Exhibit 40, pp. 1-2 (ECF No. 15-40, pp. 2-3).  The Nevada Supreme Court affirmed the judgment of conviction on February 3, 2010.  *See id*.

On January 20, 2011, Hankston, acting *pro se*, filed, in the state district court, a post-conviction petition for writ of habeas corpus.  Exhibit 47 (ECF No. 15-47); *see also* Exhibit 49 (ECF No. 16) (Hankston subsequently filed a substantially identical habeas petition).  Counsel was appointed, and, with counsel, Hankston filed a supplement to the petition on June 11, 2012.  Exhibit 55 (ECF No. 16-6).  The state district court held an evidentiary hearing on October 11, 2012.  *See* Transcript of Proceeding, Exhibit 58 (ECF No. 17-1).  The state district court denied the petition in a written order filed on December 7, 2012.  *See* Findings of Fact, Conclusions of Law and Order, Exhibit 60 (ECF No. 17-3).  Hankston appealed, and the Nevada Supreme Court affirmed on July 22, 2013.  *See* Order of Affirmance, Exhibit 67 (ECF No. 17-10); Judgment, Exhibit 69 (ECF No. 17-12).  The Nevada Supreme Court issued its remittitur on August 16, 2013.  *See* Remittitur, Exhibit 68 (ECF No. 17-11).

This court received Hankston's original *pro se* federal habeas petition, initiating this action, on September 3, 2013 (ECF No. 5).  The court granted Hankston's motion for appointment

of counsel, and appointed counsel to represent him.  *See* Order entered May 28, 2014 (ECF No. 4).  With counsel, Hankston filed a first amended habeas petition (ECF No. 14) and, subsequently, a second amended habeas petition (ECF No. 20).  Hankston's second amended petition asserts the following claims:

> 1(1).  Trial counsel was ineffective, in violation of Hankston's federal constitutional rights, because he "failed to call witnesses who would have supported a claim of self-defense."  Second Amended Petition (ECF No. 20), p. 14.
>
> 1(2).  Trial counsel was ineffective, in violation of Hankston's federal constitutional rights, because he "failed to present evidence of Hankston's prior shooting."  *Id*. at 17.
>
> 1(3).  Trial counsel was ineffective, in violation of Hankston's federal constitutional rights, because he "failed to present evidence of Kevin Washington's prior history in the criminal justice system."  *Id*. at 18.
>
> 1(4).  Trial counsel was ineffective, in violation of Hankston's federal constitutional rights, because he "failed to seek testing of the bullet casings."  *Id*. at 19.
>
> 2.  "The prosecution failed to [disclose] material exculpatory evidence," in violation of Hankston's federal constitutional rights.  *Id*. at 20.

Respondents filed a motion to dismiss (ECF No. 22), and the court ruled on that motion on October 16, 2015 (ECF No. 29).  The court ruled that Claim 2 was not barred by the statute of limitations, but was unexhausted in state court.  *See* Order entered October 16, 2015 (ECF No. 29), pp. 6, 9-10.  The court ordered Hankston to make an election to either file a notice of abandonment of Claim 2, or, alternatively, file a motion for stay, requesting a stay of this action to allow him to return to state court to exhaust Claim 2.  *See id*. at 9-10.  On November 19, 2015, Hankston abandoned Claim 2 (ECF No. 32).

In its ruling on the motion to dismiss, the court also ruled that Claim 1(1) was exhausted in state court to the extent it is based on Hankston's assertion that his trial counsel was ineffective for not presenting the testimony of Shane Harris and Tasha Bradford in support of a self-defense theory.  *See* Order entered October 16, 2015, p. 7.  With respect to the remainder of Claim 1(1), and Claims 1(2), 1(3) and 1(4), the court determined that those claims were not presented to the Nevada Supreme Court; however, the court ruled -- based on Hankston's concession -- that there was no

longer an available remedy regarding those claims in state court, so those claims were exhausted, but may be barred by the procedural default doctrine. *See id*. at 7-9. The court continued, as follows, regarding those claims:

> Federal law recognizes a species of cause for a procedural default of a claim of ineffective assistance of counsel that is not recognized under Nevada law: ineffective assistance of post-conviction counsel. *See Martinez v. Ryan*, 132 S.Ct. 1309 (2012); *see also Brown v. McDaniel*, 331 P.3d 867 (Nev. 2014). Hankston contends that, while ineffective assistance of his post-conviction counsel would not constitute cause under Nevada law, he can show such cause in federal court, and thereby overcome his procedural default of the defaulted part of Claim 1(1), and Claims 1(2), 1(3) and 1(4). *See* Opposition to Motion to Dismiss, pp. 8-16. Respondents, on the other hand, contend that Hankston does not make the showing required by *Martinez* to overcome his procedural default. *See* Reply in Support of Motion to Dismiss, pp. 5-8.
>
> \* \* \*
>
> The defaulted part of Claim 1(1), and Claims 1(2), 1(3) and 1(4), may be barred by the doctrine of procedural default. The resolution of that question, however, turns upon whether Hankston can make a showing of cause and prejudice under *Martinez* to overcome the procedural default, which in turn will, to a large degree, turn on the merits of those claims. The court determines, therefore, that the issue of the procedural default of part of Claim 1(1), and Claims 1(2), 1(3) and 1(4), will be better addressed after respondents file an answer, responding to those claims -- as well as the portion of Claim 1(1) that Hankston did assert in the state supreme court -- and after a reply by Hankston. The court declines, at this time, to reach the question whether part of Claim 1(1), and Claims 1(2), 1(3) and 1(4), are barred by the procedural default doctrine; respondents may argue those issues in their answer, at such time when an answer is called for, and Hankston may respond in his reply to respondents' answer.

*Id*. at 8-9.

Respondents filed an answer on January 19, 2016 (ECF No. 33), and Hankston filed a reply on March 4, 2016 (ECF No. 34). Hankston also filed a motion for leave to conduct discovery (ECF No. 35).

In an order entered on April 19, 2016, the court determined that, with respect to the procedurally defaulted portion of Claim 1(1), and Claims 1(2) and 1(3), Hankston could not overcome his procedural default by showing cause and prejudice under *Martinez*, and the court, therefore, dismissed those claims on procedural default grounds. *See* Order entered April 19, 2016 (ECF No. 38), pp. 4-7. Specifically, the court ruled as follows regarding those claims:

>With respect to each of these claims, Hankston's procedural default occurred at the appellate level in his state habeas action, not before the state district court, where he did in fact assert these issues and where they were adjudicated. The United States Supreme Court, in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), instructed that cause may be shown to overcome a procedural default of a claim of ineffective assistance of counsel, by showing ineffective assistance of post-conviction counsel. *See Martinez*, 132 S.Ct. at 1320. However, the Supreme Court made clear that its holding "does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings ....*" *Id*. (emphasis added); *see also id*. at 1316. Under the explicit holding of the Supreme Court in *Martinez*, ineffective assistance of counsel on appeal in a state post-conviction does not serve as cause to overcome a procedural default.
>
>Hankston argues that his state post-conviction counsel was ineffective, at the state district court level, "for failing to properly present his claims to the state court." *See* Reply (ECF No. 34), pp. 20-25. While such alleged ineffectiveness of Hankston's post-conviction counsel, at the district court level, might arguably have affected the resolution of Hankston's petition in the state district court, that alleged ineffectiveness of counsel did not cause his claims to be procedurally defaulted. The procedural default occurred because the claims were not presented -- in any manner -- on the appeal in the state habeas action, leaving them unexhausted in state court, and subject to state-law procedural bars if asserted in a subsequent state habeas action. Under *Martinez*, Hankston's counsel's alleged ineffectiveness on the appeal in his state habeas action, on account of his decision to not pursue claims on the appeal, does not function as cause, to overcome the procedural default of Hankston's claims.
>
>Therefore, Claim 1(1) -- except to the extent based on Hankston's claim that his trial counsel was ineffective for not presenting the testimony of Shane Harris and Tasha Bradford -- and Claims 1(2) and 1(3) are procedurally defaulted, and Hankston does not show cause and prejudice to overcome those procedural defaults. Consequently, those claims will be dismissed.

*Id*. at 6-7.

With respect to Claim 1(4) -- Hankston's claim that his trial counsel was ineffective for not having four bullet casings found at the scene of the shooting tested to determine if they were all shot from the same gun -- the court found that Hankston's default occurred before the state district court in his state habeas action, and that, therefore, he could possibly show cause and prejudice regarding the default of that claim under *Martinez*. *See id*. at 8. The court granted Hankston leave to conduct discovery regarding that claim, to wit, the testing of the bullet casings. *See id*. at 8-9. The court reserved any further ruling on Claim 1(4), as well as on the portion of Claim 1(1) that was not procedurally defaulted, until after Hankston could conduct his discovery and the parties could supplement their briefing in light of the results of the discovery. *See id*.

Hankston's Motion for Reconsideration

On August 9, 2016, Hankston filed a motion for reconsideration of the dismissal of the procedurally defaulted portion of Claim 1(1) and Claims 1(2) and 1(3).  *See* Motion to Reconsider Dismissal of 1(1), 1(2), and 1(3) (ECF No. 49).  Respondents filed an opposition to that motion on August 23, 2016 (ECF No. 50).  Hankston filed a reply on September 2, 2016 (ECF No. 53).

Hankston points out, correctly, that this court has inherent authority to reconsider an interlocutory order before final disposition of the case. *See* Motion to Reconsider (ECF No. 49), p. 2; *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

However, Hankston does not show cause for this court to reconsider its dismissal of the procedurally defaulted portion of Claim 1(1) and Claims 1(2) and 1(3).  Hankston continues to focus on his state post-conviction counsel's alleged failure to properly develop those claims in the state district court.  However, as the court ruled in the April 19, 2016, order, it was not post-conviction counsel's alleged failures before the state district court that led to the default of these claims; it was the failure to raise the claims on the appeal in the state habeas action that caused the default.  The United States Supreme Court instructed in *Martinez* that its holding "does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings* ...." *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012)(emphasis added); *see also id*. at 1316.  Under this explicit holding in *Martinez*, ineffective assistance of counsel on appeal in a state post-conviction does not serve as cause to overcome a procedural default.  Hankston does not show cause for the court to reconsider its application of this plain direction of the Supreme Court.  The court will deny the motion for reconsideration.

Claim 1(4)

Claim 1(4) is Hankston's claim that his trial counsel was ineffective, in violation of his federal constitutional rights, because counsel failed to seek testing of four bullet casings found at the

6

scene of the shooting. *See* Second Amended Petition (ECF No. 20), pp. 19-20. The court ruled in the April 19, 2016, order that this claim was procedurally defaulted in the state district court in Hankston's state habeas action, and, therefore, Hankston can argue that ineffective assistance of his post-conviction counsel was cause for the procedural default, and that he was prejudiced. *See* Order entered April 19, 2016 (ECF No. 38), p. 8; *see also Martinez*, 132 S.Ct. at 1320; *McCleskey v. Zant*, 499 U.S. 467, 497 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The question whether Hankston can show cause and prejudice, on account of ineffective assistance of his post-conviction counsel, to overcome his procedural default of Claim 1(4) is now before the court, along with the merits of that claim if Hankston can overcome the procedural default.

The court granted Hankston leave of court to conduct discovery regarding this claim: the testing of the bullet casings. *See* Order entered April 19, 2016 (ECF No. 38); Order entered May 12, 2016 (ECF No. 42). Hankston has now completed that discovery, and both Hankston and the respondents have filed supplemental briefing in light of the results. *See* Supplemental Brief in Light of Discovery (ECF No. 47); Supplemental Exhibits (ECF No. 48); Supplemental Response in Light of Discovery (ECF No. 51); Reply to Supplemental Response in Light of Discovery (ECF No. 52).

There were four bullet casings found at the scene of the shooting; those bullet casings were assigned numbers 1, 2, 3 and 4 for identification. A photograph showing where the bullet casings were found was introduced into evidence at trial and is found in the record in this case at ECF No. 16. Close-up photographs of the bullet casings, as they were found at the scene, were also introduced at trial, and are found in the record in this case at Exhibits 17 (ECF No. 15-17) (bullet casing number 1), 18 (ECF No. 15-18) (bullet casing number 2), 19 (ECF No. 15-19) (bullet casing number 3), and 20 (ECF No. 15-20) (bullet casing number 4). The premise of Hankston's claim is that if his trial counsel had had the bullet casings tested, and if it turned out that they were shot from more than one gun, that would have supported his defense at trial, which was that he was misidentified as the shooter, or it would have supported a self-defense theory that his trial counsel

1  should have asserted.  *See* Second Amended Petition (ECF No. 20), pp. 19-20; Supplemental Brief in
2  Light of Discovery (ECF No. 47), pp. 5-10.
3          The results of the testing, as interpreted by Hankston, are as follows:
4          (a)  [Bullet casings] 1 and 3, both Winchesters, were fired from the same firearm.
5          (b)  [Bullet casing] 4, a Winchester, was <u>not</u> fired by the firearm that fired [bullet casings] 1 and 3.
6  
7          (c)  [Bullet casing] 2, the Speer, was <u>not</u> fired by the firearm that fired [bullet casing] 4.  There was insufficient detail to determine whether [bullet casing] 2 was, or was not, fired by the firearm that fired [bullet casings] 1 and 3.
8  
9  Supplemental Brief in Light of Discovery (ECF No. 47), p. 4.
10         These test results, therefore, do support a conclusion that one of the bullet casings found at
11 the scene was shot by a different gun than the other three.  However, when considered together with
12 evidence admitted at trial, this does not support a conclusion that two different guns were fired in the
13 course of the incident underlying this case.  The photograph of bullet casing number 4, the one found
14 to have been shot by a different gun, is Exhibit 20, at ECF No. 15-20.  It is obvious from that
15 photograph that bullet casing number 4 was not recently shot; the bullet casing was tarnished and
16 corroded, and had plainly settled into the gravel and debris over time.  *See* Exhibit 20 (ECF No. 15-
17 20).  The appearance of bullet casing number 4 in that regard is far different from the appearance of
18 bullet casings number 1, 2 and 3, which appear to have been recently shot.  *Compare* Exhibit 20
19 (ECF No. 15-20) *and* Exhibits 17, 18 and 19 (ECF Nos. 15-17, 15-18 and 15-19).  Had Hankston's
20 trial counsel had the bullet casings tested, with the results showing that bullet casing number 4 was
21 shot from a different gun from the others, the appearance of bullet casing number 4 in the
22 photograph would have undermined Hankston's argument that more than one gun was fired during
23 the incident at issue in this case.
24         Hankston points out that the State has long taken the position that there were four shots fired
25 during the incident in question, and has never suggested that any of the four bullet casings was an
26 older casing unrelated to this case.  However, this issue was never before raised by Hankston, and

the State has never before been forced to confront it.  For purposes of the cause and prejudice issue now before the court, the salient point is that, in light of the appearance of bullet casing number 4 in the photograph at Exhibit 20, if the issue had been raised, it is inconceivable that a jury would have been convinced that bullet casing number 4 was shot in the incident underlying this case.

Given that bullet casing number 4 plainly was not recently shot, and plainly was not related to the shooting in this case, Hankston is left with nothing more than new evidence that three, rather than four, shots were fired.  Reviewing the trial record, the court finds that this difference, had it been shown to the jury, would not possibly have changed the outcome of the trial.  The witnesses at trial were not certain how many shots were fired, and Hankston's culpability did not turn on that detail.

With regard to Claim 1(4), then, the court concludes that there is no reasonable probability that testing of the bullet casings would have changed the outcome of Hankston's trial, and Hankston was not prejudiced by his post-conviction counsel's failure to assert this claim in his state habeas action.  Hankston does not, therefore, show cause and prejudice to overcome the procedural default of this claim, and it will be denied on the ground that it is procedurally defaulted.

Hankston requests an evidentiary hearing with respect to this claim.  The court, however, determines that, in light of Exhibit 20, the photograph of bullet casing number 4, there is no need for an evidentiary hearing.  The import of that evidence is clear on its face.  Bullet casing number 4 plainly predated the incident underlying this case, and the fact that it was shot by a different gun would not have affected the outcome of the trial.  An evidentiary hearing is unnecessary.

The Remaining Portion of Claim 1(1)

In the remaining portion of Claim 1(1), Hankston claims that his trial counsel was ineffective for not presenting the testimony of Shane Harris and Tasha Bradford in support of a self-defense theory.  *See* Order entered October 16, 2015, p. 7; *see also* Second Amended Petition, pp. 14-17.

Hankston asserted this claim in his state habeas petition.  *See* Petitioner's Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 55, pp. 7-10 (ECF No. 16-6, pp. 8-

11).  The state district court held an evidentiary hearing, focused primarily on this claim.  *See* Transcript of Proceeding, Exhibit 58 (ECF No. 17-1).  The state district court denied the claim in a written order filed on December 7, 2012.  *See* Findings of Fact, Conclusions of Law and Order, Exhibit 60 (ECF No. 17-3).  Hankston appealed, and the Nevada Supreme Court affirmed. *See* Order of Affirmance, Exhibit 67 (ECF No. 17-10); Judgment, Exhibit 69 (ECF No. 17-12).

Because this claim was addressed and denied on its merits in state court, the standard of review in this federal habeas corpus action is the deferential standard imposed by 28 U.S.C. § 2254(d).  Under that statute, a federal court may not grant an application for a writ of habeas corpus on behalf of a person in state custody on any claim that was adjudicated on the merits in state court unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.  28 U.S.C. § 2254(d).  A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  A state-court ruling is "an unreasonable application" of clearly established federal law, under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the particular case. *See Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).  To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable."  *Id*. at 409-10; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In *Strickland v. Washington*, the United States Supreme Court established a two-prong test for ineffective-assistance-of-counsel claims. A petitioner must show (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant so severely that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one prong, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court has adjudicated a claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable under 28 U.S.C. § 2254(d) is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

11

1    At the evidentiary hearing in state court, Hankston's trial counsel testified that he felt Harris would not be a helpful witness because he only heard gunshots and did not see anything, and that he knew nothing about Bradford, and Hankston told him nothing about her being a potential witness. *See* Transcript of Proceeding, Exhibit 58, pp. 10-11, 16-18 (ECF No. 17-1, pp. 11-12, 17-19).  He testified further that neither Hankston nor anyone else ever told him that Hankston acted in self-defense. *See id*. at 18 (ECF No. 17-1, p. 19).  He testified that the only defense he had available was misidentification -- the argument that Hankston was not the shooter.  *See id*. at 18-19 (ECF No. 17-1, pp. 19-20).  The state district court found Hankston's trial counsel's testimony to be credible. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 60, p. 6 (ECF No. 17-3, p. 7).  Bradford and Harris testified at the evidentiary hearing as well, but the state district court found that Bradford's testimony was not credible, that both were arguably biased, and that their testimony would not have had a reasonable probability of affecting the outcome of the trial. *See id*. at 7, 13 (ECF No. 17-3, pp. 8, 14).

On appeal, the Nevada Supreme Court ruled on this claim as follows:

> Hankston asserts that had counsel interviewed Shane Harris and Tasha Bradford they would have informed him that at least one of the individuals who approached Hankston before the shooting was armed and with this information counsel could have presented a theory of self-defense, as he requested.  The district court conducted an evidentiary hearing, found Bradford's testimony not credible, made no finding regarding Harris or Hankston's testimony, and found credible trial counsel's testimony that Hankston never told him that he acted in self-defense or asked him to seek out any witnesses to present a theory of self-defense.  The district court also noted that, while the jury was deliberating at trial, counsel stated that Harris had been contacted by an investigator and had nothing to offer and Hankston acknowledged that either Harris was unable or unwilling to testify.  The district court denied Hankston's claims, concluding that counsel was not deficient for presenting a misidentification defense and Hankston failed to demonstrate a reasonable likelihood that the verdict would have otherwise been different because neither Bradford nor Harris actually saw the shooting. *See State v. Love*, 109 Nev. 1136, 1139, 865 P.2d 322, 324 (1993).  The record supports these determinations.  We conclude that the district court did not err denying these claims....

Order of Affirmance, Exhibit 67, pp. 2-3 (ECF No. 17-10, pp. 3-4).

Affording the state court ruling the deference it is due, this court determines that the Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of

12

*Strickland*, or any other clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Hankston habeas corpus relief on this claim.

Certificate of Appealability

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying this standard, the court finds that a certificate of appealability is warranted with respect to one issue in this case: Claim 1(4).

**IT IS THEREFORE ORDERED** that petitioner's Motion to Reconsider (ECF No. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's second amended petition for writ of habeas corpus (ECF No. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is granted a certificate of appealability with respect to Claim 1(4) in his second amended petition for writ of habeas corpus.

**IT IS FURTHER ORDERED** that the clerk of the court shall enter judgment accordingly.

Dated September 30, 2016.

_____
UNITED STATES DISTRICT JUDGE